# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| PRAETORIAN INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>v.<br><br>APD, LLC<br><br>       Defendants. | Case No. 1:15-cv-1264-ODE |

**PRAETORIAN INSURANCE COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
<u>SUMMARY JUDGMENT</u>**

Defendant Praetorian Insurance Company ("Praetorian") files this Reply Brief in Support of its Motion for Summary Judgment, showing the Court as follows:

I. **INTRODUCTION**

In this insurance coverage action, Praetorian seeks a declaratory judgment that coverage is unavailable to APD, LLC ("APD") for a known fire loss that occurred before APD paid the premium for its insurance policy and the coverage was bound. APD's Response to Praetorian's Motion for Summary Judgment ("Response") [ECF No. 27] fails to create any genuine issue of material fact, and Praetorian is entitled to summary judgment as described in its Motion for Summary Judgment. ECF No. 26.

APD sought coverage for a fire loss at 340 Holly Street in Atlanta, Georgia (the "Property") under policy no. P0033IM103490-00 (the "Policy"), which provided builder's risk coverage to APD, subject to the Policy's terms, conditions, limitations, and exclusions (the "Policy"). It is undisputed, however, that at the time APD's retail agent, Sutter, McLellan, and Gilbreath ("Sutter"), received APD's premium payment and coverage was bound under the Policy, APD knew about the fire loss and failed to notify Sutter or Praetorian. This attempt to shift responsibility for the fire loss, which occurred before coverage was bound, fails as

1

a matter of law, because insurance coverage is only available for contingent and unknown losses, not for losses that an insured knows about yet fails to disclose to its insurer.

It is undisputed that Praetorian did not receive APD's premium payment until after APD learned of the fire at the Property on July 17, 2014. When APD made this payment by email, it failed to notify Praetorian or Sutter of the fire loss, and instead, waited an additional four days before notifying Sutter. It waited these additional four days even though it exchanged over five emails with Sutter on the day of the fire. This purposeful concealment violated the Concealment, Fraud, and Misrepresentation provision of the Policy, precluding coverage for the fire loss.

In short, APD attempted to avoid purchasing fire insurance until a fire had occurred, and after learning of the fire, immediately sought to bind coverage. Its attempt to secure coverage for a known loss fails as a matter of law. Further, its purposeful concealment of the fire loss violates the terms of the Policy, voiding the Policy. For all of these reasons, there is no genuine issue of material fact and Praetorian is entitled to summary judgment.

I. **RELEVANT FACTS**

Praetorian incorporates the Relevant Facts from its Brief in Support of its Motion for Summary Judgment. ECF No. 26-1.

## II. ARGUMENT

It is undisputed that at the time Sutter received APD's policy premium payment and coverage was bound under the Policy, APD knew about the fire loss at the Property (the "Loss"). Because APD knew about the Loss before coverage was bound, coverage is unavailable. Further, APD's purposeful concealment of the Loss from Sutter and Praetorian violates the Concealment, Fraud, and Misrepresentation provision of the Policy, voiding the Policy and precluding coverage. For these reasons, Praetorian is entitled to summary judgment.

### A. Coverage Was Bound After the Known Fire Loss

The undisputed evidence shows that: (1) Sutter received the policy premium payment after APD was notified of the Loss; (2) coverage under the Policy was bound after the Loss; and (3) APD failed to notify Sutter or Praetorian of the known Loss before coverage was bound. Because an insured may not purchase insurance for a known loss, coverage is unavailable under the Policy.

It is a fundamental tenet of insurance law that a party may not "insure against a loss that he knows has already occurred and that he fails to disclose to the insurer." Nourachi v. First Amer. Title Ins. Co., 44 So.3d 602, 607 (D.C.A Fla. 2010). Here, the evidence shows that: (1) a fire occurred on the morning of July 17, 2014; (2) APD was notified of the fire by at least 10:23 a.m. on July 17, 2014;

(3) hours after it was notified of the fire on July 17, 2014, APD emailed a copy of its policy premium check to Sutter; and (4) coverage was bound after Sutter received this check by email on July 17, 2014. Exs. B ¶¶ 4, 10; F; G; H; P to Praetorian's Brief in Support of its Motion for Summary Judgment ("Brief") at ECF Nos. 26-7, 8, 17, 20, 21. Thus, at the time coverage was bound, the Loss was not "an unknown, fortuitous risk," but rather, it was the exact type of non-contingent risk that insurance is not designed to cover. Warrantech Corp v. Steadfast Ins. Co., 210 S.W.3d 760, 766 (Tex. Ct. App. 2006 – Fort Worth); Outboard Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1210 (Ill. 1992) ("By its very nature, insurance is fundamentally based on contingent risks which may or may not occur.").

In its Response, APD fails to cite to any evidence that its premium payment was received before the Loss, nor does it point to any evidence showing that it was unaware of the Loss at the time it emailed the premium payment to Sutter and coverage was bound. Instead, in an attempt to distract the Court, it argues that "APDS mailed a copy of the premium check on July 15, 2014." ECF No. 27-1 at 5. This statement fails to create a genuine issue of material fact for two reasons. First, Ms. Fowler was clear that coverage could only be bound once she received payment, and thus, it is irrelevant when APD mailed the check. This statement

4

acts only as a red herring meant to distract the Court. Second, even if it mattered when the check was sent, APD cites to no direct evidence supporting its statement that the check was in fact mailed on July 15, 2014. For these reasons, Praetorian is entitled to summary judgment as no genuine issues of material fact exist.

### 1. Coverage Could Only be Bound After Sutter Received APD' Premium Payment

Ms. Fowler was clear in her correspondence to APD that coverage could only be bound under the Policy once she <u>received</u> the premium payment, whether by mail or email. Ex. B to the Brief ¶¶ 4, 5, and 8, ECF No. 26-20. For instance, Ms. Fowler stated in an email to Ms. Tyler at APD that:

> This Policy is ready to be issued. All we need is the attached application signed where indicated and payment of $2,804.00 made out to SMG insurance. *Attach both to an email and send to me.*

<u>Id</u>. at Exs. 1, 2 (emphasis added). This email was dated June 20, 2014 – almost a month before the Loss and before coverage was bound under the Policy. <u>Id</u>. APD responded, stating that it "would have the application signed when our CEO returns to the office." <u>Id</u>. To this, Ms. Fowler said that she would "await the app and payment." <u>Id</u>. These communications show that by at least June 20, 2014, Ms. Fowler clarified and APD understood that coverage could not be bound until payment was received. <u>Id</u>. It is also clear that she could receive the premium payment by mail or email. <u>Id</u>.

5

After APD finally emailed its premium payment to Sutter pursuant to Ms. Fowler's June 20, 2014, email, Ms. Fowler was adamant that she could only bind coverage as of the date she received payment, or July 17, 2014. Ex. B to the Brief ¶ 8; Ex. 5, ECF No. 26-20. When APD asked if coverage could be bound as of the date of the check or July 15, 2014, Ms. Fowler reiterated that "the effective date is the date we receive the check which was today." Id. In a separate email sent that same day, Ms. Fowler again stated that:

> The builders risk for 340 Holly Street cannot be bound until payment is received. We can use a copy of the check as payment and swipe the funds from the account and void the paper check when received and send it back to you to be able to bind today if you wish.

Id. at Ex. 5. In these emails, Ms. Fowler is clear that coverage could only be bound once she received the premium payment, and further, that the date the check was mailed does not affect when coverage was bound.

This undisputed evidence shows that coverage could not be bound until payment was received. Thus, the fact that APD reportedly mailed a check to Sutter on July 15, 2014, which was never received, is irrelevant to this Court's analysis. Rather, the relevant evidence is that: (1) coverage could only be bound under the Policy when Sutter received APD's premium payment; (2) at the time Sutter received payment from APD, APD undisputedly knew about the Loss; and (3) APD failed to notify Sutter, its agent, or Praetorian of the known Loss at any time

6

before coverage was bound. Exs. B ¶ 4, 10; G; P to the Brief at ECF Nos. 26-8; 26-17; 26-20.

APD spends a significant portion of its Response citing law regarding course of dealing and course of conduct. Although it is unclear from its Response, Praetorian assumes that APD is attempting to argue that based on APD's and Sutter's course of conduct, mailing a check was sufficient to bind coverage. It makes this argument, however, without providing any evidence of the Parties' prior course of conduct or dealings. There simply is no evidence that Sutter ever bound coverage without first receiving payment.

Rather, the evidence here supports the opposite conclusion, as Ms. Fowler reiterated in over four separate emails, both before and after the Loss, that coverage could only be bound as of the date payment was received. ECF No. 26-20. Given this express term, any course of dealing between APD Solution and Sutter is irrelevant. Haupt v. Phoenix, 35 S.E. 342, 342 (Ga. Ct. App. 1900). In fact, the very cases cited by APD support Praetorian's argument as they clarify that an insurance contract only exists if "circumstances would lead a reasonable man to conclude such was the intention." Ray v. Georgia Farm Bureau Mut. Ins. Co., 337 S.E.2d 779, 780-81 (Ga. Ct. App. 1985); Greene v. Commercial Union Ins. Co., 221 S.E.2d 479, 479 (Ga. Ct. App. 1975). Given Ms. Fowler's repeated and clear

statements that coverage could only be bound when payment was received, no reasonable person could conclude that coverage was bound when the premium payment was mailed.

A Georgia appellate court rejected APD's argument in <u>Carterosa v. General Star Indem. Co</u>., 489 S.E.2d 83 (Ga. Ct. App. 1997). There, an insurer, through a broker, offered to renew a policy of insurance; however, it specified in its written offer that "in order to bind coverage, we must be notified in writing or by fax prior to binding date." <u>Id</u>. at 86. After the insurance agent requested a premium finance agreement, the broker further specified that coverage could only be bound once it received the signed agreement. <u>Id</u>. The insured signed a premium finance agreement and sent it to its insurance agent, which failed to forward the agreement to the insurer's broker. <u>Id</u>. Thereafter, the insured sought coverage for a fire. <u>Id</u>.

The court held that coverage was never bound under the renewal policy. <u>Id</u>. In so holding, it reasoned that "[t]he offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." <u>Id</u>. Because the insured and/or its agent failed to notify the broker in writing or by fax of its acceptance and failed to forward a copy of the signed premium finance agreement to the broker, the court held that the renewal offer was never accepted and coverage was

unavailable for the fire. Id. For the same reason, i.e. because the insurer specified that coverage could only be bound once it received the premium finance agreement, the Court rejected the insured's argument that the policy was bound once the agreement was mailed under the mailbox rule. Id.

Here, as in Carterosa, Ms. Fowler was clear that that coverage could only be bound once payment was received. Thus, if and when APD mailed a copy of the premium payment to Sutter is irrelevant; rather, coverage was bound on July 17, 2014, after the Loss, when Sutter first received APD's premium payment.

### 2. There is No Evidence that APD Mailed the Premium Payment

Even if the date the check was mailed was somehow pertinent, APD has not submitted any evidence, despite numerous discovery requests, showing that a paper copy of the check was, in fact, mailed before the Loss. It has not produced any proof of postage, tracking slips, cover letters, or testimony of anyone with first-hand knowledge that the check was sent by mail, as well as email. Rather, APD relies solely on Ms. Tyler's testimony that APD generally mailed its premium payments, even though she was clear that "I don't do the mail here" and that "I would not have been the one that would have sent it. It wouldn't have come from me to the insurance company." EUO of Vaughn Irons and Donna Tyler at 63:11-64:3, true and correct copies of pertinent pages attached as Exhibit "A." Even

though Ms. Tyler has no personal knowledge of how the checks were mailed, when the checks were mailed, and to whom the checks were mailed, she generally testified that "[Sutter] asks us to send the hard copy [of the check] as well." Id. at 61:5-19. She clarified, however, that "we would have swiped the check when it came through, you know, swiped it to the broker. It would have been still a paper check but that we would have swiped it to her, in other words, emailed it to her." Id. at 59:1-22. Ms. Tyler did not, and could not, testify as to whether the premium payment for this Policy was ever sent by mail.

In fact, the only direct evidence indicates that Sutter never received a paper copy of the check by mail. Ex. B to the Brief ¶ 7, 26-20. In a final attempt to misdirect the Court, APD challenges Ms. Fowler's credibility and claims that her testimony is hearsay. As far as credibility, APD asserts that Ms. Fowler required both the application and the premium payment before binding coverage; however, she asked Safehold, the wholesale broker, to bind coverage after only the premium payment was received. ECF No. 27-1 at 10. In so arguing, APD surprisingly claims that coverage should not have been bound until July 22, 2014, or when Sutter received its application. If so, the Loss clearly would be outside the Policy period and coverage would be unavailable. Even if Ms. Fowler's statements regarding the application were contradictory (which they are not), APD does not

10

claim that Ms. Fowler ever made any contradictory statement regarding when the premium payment was received and how it was received. In fact, APD has offered no evidence whatsoever that Sutter received the premium payment for the Policy at any time other than by email on July 17, 2014.

Further, the statements in Ms. Fowler's affidavit are not based on hearsay. Ms. Fowler was the retail agent who helped APD obtain builders' risk coverage under the Policy. She had personal knowledge of when and how payment was received, as she was responsible for contacting Safehold to bind coverage. Even in the referenced email upon which APD bases its hearsay argument, Ms. Fowler states that "to my recollection we did not receive this check by mail." Ex. B at Ex. 5, ECF 26-20. At the time she executed the affidavit, she had reviewed accounting records and had personal knowledge that Sutter never received a copy of the check by mail.

The evidence is clear that: (1) coverage could only be bound when payment was received; (2) at the time payment was received APD knew about the Loss; and (3) despite its knowledge of the Loss, APD did not notify its retail agent or Praetorian. For these reasons, coverage is unavailable for the known Loss.

**B. APD Violated the Concealment, Fraud, and Misrepresentation Provision Precluding Coverage**

By failing to notify Praetorian of the fire Loss when it emailed its premium payment to Sutter, APD violated the Concealment, Fraud and Misrepresentation provision of the Policy.[1] For this reason, the Policy is void and coverage for the Loss is precluded.

APD does not dispute that it failed to notify Sutter or Praetorian of the Loss at the time it emailed its premium payment to Sutter, concealing the fact of the Loss. Rather, it argues that there exists a question of fact as to whether the concealment was material. In Georgia, a statement is material if it "would

---

[1] The Policy's Concealment, Fraud and Misrepresentation provision provides as follows:

**OTHER CONDITIONS**

5. Misrepresentation, Concealment, or Fraud – This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "You" or any other insured have willfully concealed or misrepresented;

      1) A material fact or circumstances that relates to this insurance or the subject thereof; or

      2) "your" interest herein.

   b. There has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

Policy at IM 7050 08 12, pg. 18 of 21, ECF 26-16.

influence action of a prudent insurer in determining whether to accept risk and what premium to charge" or if it "might affect [the insurer's] action in respect to ... settlement or adjustment of the claim." Pope v. Indem. Co. of Ga., 677 S.E.2d 693, 696-97 (Ga. Ct. App. 2009); Assurance Co. of Am. v. Defoor Station, LLC, No. 1:09–CV–3198, 2011 WL 5598900 at *5 (N.D. Ga. 2011)  Despite APD's argument to the contrary, courts have not hesitated to grant summary judgment to an insurer when an insured conceals or misrepresents a material fact and "reasonable minds could not differ on the question" of a misrepresentation's materiality. Assurance Co. of Am., 2011 WL 5598900 at *5; Perry v. State Farm Fire & Cas. Co., 734 F.2d 1441, 1443 (11th Cir. 1984) ("Whether a misrepresentation is material is a jury question, unless the evidence excludes every reasonable inference except that there was or was not a material misrepresentation."); Liberty Corporate Capital v. Bhanu Management d/b/a Relax Inn, No. 5:13-cv-00119 (S.D. Ga. 2015).

For instance, in Persipolis, this Court granted summary judgment to an insurer because the insured misrepresented the amount it lost in a burglary. Perspolis Inc. v. Federated Mut. Ins. Co., 1:03-cv-2456, 2006 WL 826469 at *2 (N.D. Ga. 2006). In granting summary judgment to the insurer, the Court reasoned that "plaintiff intentionally misrepresented a material fact-the amount lost-in its

13

claim," and therefore, "defendant properly invoked the "concealment, misrepresentation or fraud" provision." Id.

Here, at the same time it was attempting to bind coverage, APD concealed the fact that it incurred a Loss for which it would later seek coverage under the Policy. In short, it sought to make a $2,084 premium payment, and in exchange, seek coverage for the entire Loss, which totaled hundreds of thousands of dollars from Praetorian. This is not an instance where the insured simply misrepresented the extent of its loss, which this Court has found sufficient to void coverage, but instead is an example of an insured concealing the very existence of a known, prior loss for which it plans to seek coverage. Bhanu Management d/b/a Relax Inn, No. 5:13-cv-00119 (S.D. Ga. 2015); Perspolis Inc., 2006 WL 826469 at *2. There is no doubt and reasonable minds cannot differ that an insurer would be influenced by a known loss for which the insured seeks coverage under the Policy, especially when the damage totals hundreds of thousands of dollars. For this reason, there can be no genuine dispute that APD violated the Concealment, Fraud, and Misrepresentation provision of the Policy by concealing the Loss, and that this concealment was material.

It is undisputed that APD knew about the Loss on July 17, 2014, when it emailed the premium payment for the Policy to Sutter; yet, it failed to notify its

14

agent or Praetorian of the Loss until five days later, when it was sure coverage was bound. This willful concealment of a material fact violated the Concealment, Fraud, and Misrepresentation provision of the Policy, precluding coverage for the Loss.

## III. CONCLUSION

There is no genuine issue of material fact regarding whether the Loss occurred before APD emailed its agent a copy of its premium payment, resulting in coverage being bound. As such, coverage for the Loss is precluded under the known loss doctrine and the Policy is void. Similarly, APD's willful concealment of the Loss violated the Concealment, Fraud, and Misrepresentation provision of the Policy, precluding coverage. Accordingly, Praetorian is entitled to summary judgment.

This 11th day of April, 2016.

| | |
|---|---|
| | */s/ Paul L. Fields* |
| **FIELDS HOWELL LLP** | Paul L. Fields, Jr. |
| 1180 W. Peachtree, Suite 1600 | Georgia Bar No.: 003420 |
| Atlanta, Georgia 30309 | Ann T. Kirk |
| Telephone: 404.214.1250 | Georgia Bar No.: 101047 |
| Facsimile: 404.214.1251 | Colleen V. McCaffrey |
| pfields@fieldshowell.com | Georgia Bar. No.: 463183 |
| akirk@fieldshowell.com | |
| cmccaffrey@fieldshowell.com | *Counsel for Plaintiff* |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| PRAETORIAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>APD, LLC,<br><br>Defendant. | CASE NO.: 1:15-cv-1264-ODE |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading was prepared using Times New Roman, 14-point, and otherwise conforms to the requirements of Local Rule 5.1.

This 11th day of April, 2016.

| | |
|---|---|
| | /s/ Paul L. Fields |
| **FIELDS HOWELL LLP** | Paul L. Fields, Jr. |
| 1180 W. Peachtree, Suite 1600 | Georgia Bar No.: 003420 |
| Atlanta, Georgia 30309 | Ann T. Kirk |
| Telephone: 404.214.1250 | Georgia Bar No.: 101047 |
| Facsimile: 404.214.1251 | Colleen V. McCaffrey |
| pfields@fieldshowell.com | Georgia Bar. No.: 463183 |
| akirk@fieldshowell.com | |
| cmccaffrey@fieldshowell.com | *Counsel for Plaintiff* |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| PRAETORIAN INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>v.<br><br>APD, LLC<br><br>   Defendants. | Case No. 1:15-cv-1264-ODE |

## **CERTIFICATE OF SERVICE**

This is to certify that I have served the foregoing PRAETORIAN INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT upon the following counsel of record via CM/ECF filing system to:

> Michelle Williams
> Dukes Williams, LLC
> P.O. Box 91647
> Atlanta, GA 30364

This 11th day of April, 2016.

| | |
|---|---|
| **FIELDS HOWELL LLP**<br>1180 W. Peachtree, Suite 1600<br>Atlanta, Georgia 30309<br>Telephone: 404.214.1250<br>Facsimile: 404.214.1251<br>pfields@fieldshowell.com | */s/ Paul L. Fields*<br>Paul L. Fields, Jr.<br>Georgia Bar No.: 003420<br><br>*Counsel for Plaintiff* |